UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL HERNANDEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>R.D. SMITH, et al.,<br><br>    Defendants. | Case No.: 1:09-cv-00828-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RELATED MOTIONS<br><br>[ECF Nos. 54, 57, 58, 59] |

Plaintiff Raul Hernandez is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**PROCEDURAL BACKGROUND**

This action is proceeding against Defendants Drs. R. D. Smith and L. Kirk for deliberate indifference to Plaintiff's serious medical needs in their treatment of two of his teeth in violation of the Eighth Amendment.

On December 18, 2014, Defendants Drs. Smith and Kirk filed a motion for summary judgment. Plaintiff filed an opposition on January 15, 2015, along with a motion to strike Dr. Rosenberg's declaration, motion for substitution of parties, and motion to request portion of deposition withheld by Defendants. (ECF Nos. 56, 57, 58, 59.)

On April 22, 2015, Defendants filed a reply to Plaintiff's opposition and opposition to Plaintiff's motion to strike Dr. Rosenberg's declaration and request for portions of the deposition withheld.

Plaintiff filed a surreply on May 13, 2015.

## II.

## DISCUSSION

### A.     Allegations of Complaint

On September 19, 2007, Plaintiff was examined by Defendant R.D. Smith. Plaintiff informed Defendant R.D. Smith that he was having pain his molar. Defendant R.D. Smith noted that Plaintiff had two issues to be addressed. Defendant R.D. Smith noted that Plaintiff's tooth was cracked and extraction would be recommended if Plaintiff's symptoms were not relieved. Plaintiff alleges that Defendant R.D. Smith did not address the second issue, pain in tooth 8.

On September 27, 2007, Plaintiff was seen by Defendant Kirk complaining of extreme pain. Defendant Kirk diagnosed Plaintiff with advanced periodontial disease and recommended extraction of tooth 8, but Plaintiff refused the extraction.

Plaintiff saw Defendant R.D. Smith again on October 15, 2007, complaining that he was having pain from his molar and he had a bump on tooth 8 for which he wanted antibiotics. Dr. R. D. Smith recommended extraction of Plaintiff's molar and Plaintiff refused to have his tooth extracted. Plaintiff was not prescribed antibiotics or pain medication.

### B.     Defendants' Statement of Undisputed Facts[1]

1. Plaintiff is a state inmate, and at all times relevant to the complaint, was housed at Avenal State Prison.
2. Plaintiff has a G.E.D., but has had no medical or dental training and has never worked in the medical or dental field.

---

[1] This section includes the statement of undisputed facts submitted by Defendants in support of their motion, where not placed in dispute by Plaintiff by way of his verified complaint and opposition.

2

3. On or about September 16, 2007, Plaintiff submitted a Health Care Services Request Form (HCSRF) which stated: "I am in extreme pain due to an abscessed [sic] front tooth as well as a cracked molar."[2]

4. Plaintiff's HCSRF was reviewed by a Registered Nurse on September 18, 2007, and Plaintiff was scheduled to see dentist R.D. Smith the following day.

5. Dr. Smith examined Hernandez's tooth No. 31 on September 19, 2007.

6. Dr. Smith took an x-ray of tooth No. 31 on September 19, 2007 and found that the root apex appeared normal, which ruled out an abscessed tooth.

7. An abscessed tooth (also called a periapical abscess) is an acute infection where pus is enclosed in the tissues of the jaw bone (alveolar bone) coming from an infected tooth's root. With an abscessed tooth, the pus I trapped in a pocket in the alveolar bone, similar to a cyst. An abscessed tooth is solidly in the alveolar bone, so pus forms in pocket near the root and cannot drain.

8. Dr. Smith's diagnosis was that tooth No. 31 was cracked.

9. Plaintiff's dental records indicate no infection or other complications in tooth No. 31.

10. Dr. Smith observed that tooth No. 31 had a large metal amalgam with cusps that were undermined. Dr. Smith recommended extraction only if an extended amalgam cap did not relieve the symptoms.

11. On September 19, 2007, Dr. Smith scheduled Plaintiff for a follow-up appointment for October 15, 2007.

12. The condition of tooth No. 31 had existed for over a year. The condition of tooth No. 31 was not acute, nor was it a dental emergency.

13. Plaintiff did not have any objective indications that he had a serious medical need for antibiotics for tooth No. 31. Therefore, Dr. Smith did not prescribe antibiotics for the treatment of Plaintiff's tooth No. 31.

---

[2] Plaintiff attempts to dispute this fact by asserting a diamond bur was used to reduce stress of molar #31. However, Plaintiff does not dispute the statement he submitted the September 16, 2007 HCSRF form, and his assertion relating to a diamond bur procedure is nonresponsive and irrelevant.

14. No doctor or dentist has ever prescribed antibiotics for Plaintiff's tooth No. 31.
15. Plaintiff complained that tooth No. 31 "last hurt yesterday when I ate. It's an annoyance."
16. Tooth No. 31 only hurt when Plaintiff chewed. He claimed he could not chew on one side.
17. Plaintiff had a cracked tooth No. 31 for over a year, yet not doctor or dentist has ever prescribed pain medication for tooth No. 31 (except post-operatively).
18. Plaintiff had had a cracked tooth No. 31 for over a year, but appeared to be in otherwise good health.
19. From September 2007 to October 2009, Plaintiff's Primary Care Flow sheet indicates Plaintiff actually gained weight.
20. Plaintiff did not have any objective indications that he had a serious medical need for pain medication for tooth No. 31.
21. The risks and side effects of daily pain medication significantly outweigh the benefits of eliminating intermittent pain when chewing.
22. In September and October 2007, Plaintiff did not have an "abscessed front tooth."
23. Plaintiff had advanced chronic periodontitis at tooth No. 8.
24. Chronic periodontitis is a set of inflammatory diseases affecting the periodontium, i.e., the tissues that surround and support the teeth. Periodontitis involves progressive loss of the alveolar bone around the teeth, which can lead to the loosening and subsequent loss of teeth.
25. Plaintiff's chronic periodontitis at tooth No. 8 was not an acute condition nor was it a dental emergency.
26. Plaintiff's tooth No. 8 was not infected. The periodontium (gums) surrounding tooth No. 8 were infected.
27. Antibiotics would not have been effective to treat Plaintiff's chronic periodontitis at tooth No. 8 due to the depth of the periodontal pockets surrounding the tooth.

4

28. In September 2007, Plaintiff's tooth No. 8 was loose due to cumulative bone loss over a period of many months or years. The proper treatment for tooth No. 8 was extraction.

29. On September 27, 2007, Plaintiff saw Dr. Kirk for tooth No. 8. Dr. Kirk took an x-ray of tooth No. 8, performed a visual exam and measured the periodontal pockets around tooth No. 8.

30. On September 27, 2007, Dr. Kirk recommended extraction, but Plaintiff refused.

31. Dr. Kirk gave Plaintiff's chronic periodontitis at tooth No. 8 "priority 2" status, which requires follow-up within four months.

32. On his follow-up appointment on October 15, 2007, with Dr. Smith, Plaintiff complained of a "bump" on tooth No. 8 and requested antibiotics for it.

33. The bump Plaintiff complained about was a draining fistula on the gum at tooth No. 8.

34. Plaintiff's draining fistula was a periodontal abscess (also called a gingival abscess) caused by his periodontal infection.

35. The draining fistula was not an acute condition, nor was it a dental emergency.

36. Because Plaintiff's periodontal fistula was draining, antibiotics were not medically necessary.

37. Although Plaintiff was seen by other dentists for tooth No. 8, the Unit Health Report (UHR) shows that no physician or dentist has ever prescribed antibiotics for Plaintiff's tooth No. 8.

38. Plaintiff may have had some discomfort or soreness at tooth No. 8, such as when chewing. The risks and side effects of daily pain medication significantly outweigh the benefits of eliminating intermittent pain on chewing.

39. Plaintiff had advanced chronic periodontitis at tooth No. 8 for over a year and yet continued to refuse extraction of tooth No. 8 for several years.

40. Although Plaintiff was seen by other dentists for tooth No. 8, no physician or dentist has ever prescribed pain medication for Plaintiff's tooth No. 8 (except post-operatively).

|   |   |
|---|---|
| 41. | Plaintiff did not have any objective indications that he had a serious medical need for pain medication for tooth No. 8 or the draining fistula. |
| 42. | On October 15, 2007, Dr. Smith recommended extraction of tooth No. 8 but Plaintiff refused. |
| 43. | Had Plaintiff allowed extraction, the periodontitis and draining fistula at tooth No. 8 would have ceased. |
| 44. | Dr. Kirk saw Plaintiff for follow-up visit on January 17, 2008. |
| 45. | Dr. Kirk's recommendation for tooth No. 31 was to remove the amalgam cap and affected cusps and replace the cap. |
| 46. | Dr. Kirk's prognosis for saving tooth No. 31 was "guarded." |
| 47. | Plaintiff was eventually given a crown on tooth No. 31. |
| 48. | Because Plaintiff refused extraction of tooth No. 8, Dr. Kirk recommended scaling and root planning of tooth No. 8. |
| 49. | Dr. Kirk's prognosis for saving tooth No. 8 was "poor." |
| 50. | The treatment of tooth No. 8 was not successful, and Plaintiff eventually consented to have tooth No. 8 extracted. |
| 51. | Due to excessive bone loss, tooth No. 8 could not have been saved if treatment was done in September or October 27. |

**C.    Evidentiary Objections**

1.    Plaintiff's Motion to Strike Dr. Rosenberg's Declaration

Plaintiff moves to strike Dr. Rosenberg's declaration under Rule 12(f) of the Federal Rules of Civil Procedure. Plaintiff contends that "Defendants elected Dr. M. Rosenberg to concoct a declaration which presents immaterial, impertinent, and scandelous [sic] matters which should be disallowed in these proceedings." (ECF No. 57, Pl.'s Mot. to Strike at 2.) Plaintiff also objects to Dr. Rosenberg's declaration on the grounds that his expert opinion lacks adequate foundation and is prejudicial.

The Federal Rules of Evidence authorize the opinion testimony of an expert witness who has the requisite "knowledge, skill, experience, training or education" to form a specialized opinion. Fed.

1  R. Evid. 702.  "An expert may base an opinion on facts or data in the case that the expert has been
2  made aware of or personally observed.  If experts in the particular field would reasonably rely on those
3  kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion
4  to be admitted."  Fed. R. Evid. 703.

5        As an initial matter, Plaintiff's motion is improperly raised by Federal Rule of Civil Procedure
6  12, subdivision (f).  Rule 12(f) only applies to a motion to strike *pleadings*.  Fed. R. Civ. P. 12(f) ("the
7  court may order stricken from any pleading ay insufficient defense or any redundant, immaterial,
8  impertinent, or scandalous matter."); see <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697 F.2d 880, 885 (9th
9  Cir. 1983) (recognizing that Rule 12(f) does not allow a court to strike material not contained in a
10  pleading).

11        Furthermore, Plaintiff's objections to the declaration of Dr. Rosenberg must be overruled in
12  light of the Federal Rules of Evidence.  Dr. Rosenberg, the Statewide Dental Director for CDCR, is an
13  expert in his field and based his opinion upon his review of Plaintiff's Unified Health Record (UHR)-a
14  database which contains an inmate's entire health history since incarceration.  Dr. Rosenberg also
15  reviewed the transcript of Plaintiff's deposition taken on May 22, 2014.  Thus, there is no basis to
16  Plaintiff's argument that Dr. Rosenberg's expert opinion lacks foundation or is conclusory.

17        2.     <u>Plaintiff's Motion for Portion of Deposition Withheld</u>

18        Plaintiff moves for the Court to obtain portions of the deposition transcript "withheld from the
19  pleadings."  (ECF No. 59, Mot. at 2.)

20        In support of their motion for summary judgment, Defendants submitted portions of Plaintiff's
21  deposition transcripts.  Defendants served Plaintiff with copies of the pages from Plaintiff's deposition
22  transcript which was cited in Defendants' Statement of Undisputed Facts.  Defendants also lodged the
23  entire deposition transcript with the Court.

24        In his request for a copy of the portions of withheld deposition, Plaintiff fails to identify the
25  portions of the deposition transcript he feels were wrongly excluded, and Defendants served Plaintiff
26  with a copy of the pages of his deposition testimony cited in support of their motion.  Thus, Plaintiff is
27  aware and able to identify any alleged misimpressions which resulted from submission of certain
28

7

portions of the deposition testimony.  However, Plaintiff fails to identify any misrepresentation or what deposition testimony would, if introduced, clear up such misrepresentation.

Nor is Plaintiff entitled to a free copy of his deposition transcript.  Pursuant to Rule 30(f)(2) of the Federal Rules of Civil Procedure, a party may obtain a copy of the deposition upon reasonable payment of fees, and Plaintiff's in forma pauperis status does not entitle him to a free copy.  Accordingly, Plaintiff has failed to present any grounds to obtain the portions of the deposition transcript not submitted with Defendants' motion, and his request is denied.

2.    Defendants' Motion to Strike Printouts of Internet Websites

Defendants move to strike two of Plaintiff's exhibits submitted in support of his opposition which are printouts of Internet websites as inadmissible hearsay and as unauthenticated.  Fed. R. Evid. 602, 701, 702, 801, 802.  (ECF No. 71.)

Exhibit 0:17, is an Internet printout entitled "Web MD Preventing and Treating Gum Disease."  (Pl.'s Opp'n, ECF No. 56, at 59, Ex. 0:17.)  Exhibit 0:18-0:23, is an Internet printout entitled "Bupa (Gum Disease)."  (Pl.'s Opp'n, ECF No. 56 at 60-66, Ex. 0:18-0:23.)

Defendants' objections that the documents printed from the internet comprising of Exhibits 0:17-0:23 lack foundation, authentication and is hearsay are SUSTAINED.  Plaintiff has failed to produce evidence that these documents are what Plaintiff claims them to be and he cannot lay a foundation for records composed by third parties because he lacks personal knowledge regarding their contents and such documentation is hearsay.  Fed. R. Evid. 602, 801, 902.  Plaintiff does not submit the testimony of a witness with knowledge of the documents.  Fed. R. Evid. 901.  In addition, this evidence cannot be introduced in place of expert testimony regarding medical causation.  See Walker v. Contra Costa County, Nos. C03-3723 THE, C05-2800 TEH, 2006 WL 3371438, at *9 (N.D. Cal. Nov. 21, 2006); Domingo v. T.K., 289 F.3d 600, 607 (9th Cir. 2001) (competent expert testimony is required to establish medical causation between a particular event and any injury); Scott v. MTA Keller, No. 2:07-cv-00184, 2010 WL 3635728, *6 (E.D. Cal. Sept. 14, 2010).

In any event, even if the Court were to consider such documentation, it has little relevance as the articles do not describe any definitive treatment of Plaintiff's condition, and nothing in the

printouts suggests the treatment recommended or administered by either Defendant was not appropriate given Plaintiff's dental issues.

3. Plaintiff's Filing of Surreply

After briefing on this motion was complete, Plaintiff filed a reply to Defendants' reply to his opposition. A surreply is not authorized by the Local Rules or by the Federal Rules of Civil Procedure, and is only appropriate "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply." Hill v. England, No. CVF05869 REC TAG , 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005).

Here, Defendants did not raise new arguments in their reply brief, and Plaintiff did not seek leave to file a surreply. Therefore, the Court will not consider any arguments and/or evidence submitted in Plaintiff's surreply which is disregarded and stricken.

**D. Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate

specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

   1.   Deliberate Indifference to Serious Medical Need

Dental care is an important medical need and the Eighth Amendment requires that inmates be provided with a system of ready access to adequate dental care. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1018 (9th Cir. 2010). "Deliberate indifference is a high legal standard." Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. Farmer v.

Brennan, 511 U.S. 825, 837 (1994).

  **a.**  **Tooth Number 8**

   (1).  Antibiotics

  Plaintiff contends that he had an abscess at tooth number 8 and that Dr. Smith and Dr. Kirk should have treated this tooth with antibiotics and pain medication. However, contrary to Plaintiff's contention, tooth No. 8 was not abscessed. Indeed, Dr. Kirk took x-rays of tooth No. 8, performed a visual examination and measured the periodontal pockets around that tooth. Dr. Kirk diagnosed Plaintiff as having advanced, chronic periodontitis at tooth No. 8.

  In Plaintiff's case, tooth no. 8 had a periodontal abscess, and the tooth itself was not abscessed. (Id. at ¶¶ 11-15; Dr. Kirk Decl. ¶¶ 4-5, ECF No. 54-5.) While Plaintiff repeatedly refers to an abscessed front tooth, Plaintiff fails to recognize the medical distinction between an "abscessed tooth" and "periodontal abscess," the condition diagnosed to tooth no. 8. Indeed, the distinction between the two conditions is significant. An abscessed tooth, or a "periapical abscess," is an acute infection at the root of a tooth, characterized by trapped pus in the jaw bone. (Dr. Rosenberg Decl. ¶ 12, ECF No. 54-6.) However, a "periodontal abscess," or "gingival abscess," is an infection of the gum as a result of periodontitis: inflammatory diseases affecting the gums characterized by progressive loss of the jawbone around the teeth. (Id. at ¶ 13.) Periodontal abscesses can be in the form of a draining fistula. (Id. at ¶ 15.) It is undisputed that the draining fistula, which appeared as a "bump" on Plaintiff's gum, was the result of a periodontal abscess. (Id.) The draining fistula was neither an acute condition nor a dental emergency. (Id. at ¶¶ 9, 15, 17.)

  The undisputed evidence demonstrates that because the periodontal fistula at tooth No. 8 was draining, antibiotics were not medically necessary and would have been ineffective. (Dr. Rosenberg Decl. ¶¶ 13-15; Dr. Kirk Decl. ¶ 9.) The proper treatment for tooth No. 8 was extraction, which Plaintiff repeatedly refused. (Dr. Rosenberg Decl. ¶¶ 13-14; Dr. Kirk Decl. ¶¶ 5-6.) This diagnosis is confirmed by the subsequent treatment of tooth No. 8 after Dr. Smith and Dr. Kirk saw Plaintiff in September and October 2007. In January 2008, after Plaintiff refused extraction of tooth No. 8, Dr. Kirk recommended scaling and root planning of tooth No. 8, even though the prognosis for saving the tooth was "poor." (Dr. Kirk Decl. ¶ 11.) The treatment of tooth No. 8 was not successful, and

1 Plaintiff eventually consented to have tooth No. 8 extracted.  However, even if this treatment had been
2 provided in September or October 2007, Plaintiff's tooth could not have been salvaged due to the
3 excessive bone loss that already existed at that time.

4 Plaintiff may not render an opinion as to how any injury or condition concerning his teeth
5 should have been treated because Plaintiff is not a qualified expert witness concerning treatment of
6 dental injuries or diseases.  Fed. R. Evid. 701.  In addition, Plaintiff cannot argue with the level of
7 priority placed on the treatment of his tooth by dental providers.  Plaintiff contends that Dr. Smith was
8 deliberately indifferent to the condition at tooth No. 8 on September 19, 2007, because he allegedly
9 prioritized tooth No. 31 ahead of tooth No. 8.  (Pl.'s Opp'n at 11-12.)  Plaintiff's claim is contradicted
10 by the evidence of the medical notes by Dr. Smith taken at the September 19, 2007, examination.  Dr.
11 Smith did not ignore tooth No. 8 and in fact noted it, but planned to address it on a subsequent visit.
12 Such finding is consistent with the fact that tooth No. 8 was not acute or a dental emergency.  (Dr.
13 Rosenberg Decl. ¶¶ 13, 15; Dr. Kirk Decl. ¶ 5.)  To this end, Dr. Kirk examined and x-rayed tooth No.
14 8 just eight days later, on September 27, 2007.  (Dr. Kirk Decl. ¶ 4.)

15 Plaintiff attempts to undermine Dr. Kirk's diagnosis and opinion by arguing that Dr. Kirk is
16 not a certified periodontist and may not have "know[n] what to do . . . ."  (Pl.'s Opp'n at 14.)  While it
17 is true that Dr. Kirk is not a certified periodontist, he "has education, training and experience in
18 periodontics."  (Id. at 79.)  Plaintiff also concludes that Dr. Kirk "wanted Plaintiff to suffer pain for the
19 imagined recalcitrant behavior."   (Pl's Opp'n at 15.)  Plaintiff fails to support his conclusory
20 allegations with evidence to contract Dr. Kirk's diagnosis.  Furthermore, both Drs. Smith and
21 Rosenberg independently diagnosed Plaintiff with a periodontal abscess at tooth No. 8.

22 Plaintiff has not submitted evidence to show that Dr. Kirk and Dr. Smith's decision to not
23 prescribe antibiotics and pain medication was medically unacceptable under the circumstances, nor
24 that Dr. Kirk and Dr. Smith made that determination in conscious disregard of an excessive risk to
25 Plaintiff's health.  Thus, Defendants Dr. Kirk and Smith and are entitled to summary judgment on this
26 claim.
27 ///
28 ///

(2).  Pain Medication

Plaintiff contends that Drs. Smith and Kirk were deliberately indifferent to his serious dental needs by failing to prescribe pain medication for tooth No. 8.

The Constitution does not require that prison doctors provide pain medication upon request, or simply because they have some degree of pain. See O'Loughlin v. Doe, 920 F.2d 614 (9th Cir. 1990) (repeated failure to satisfy an inmate's request for aspiring and antacids to alleviate headaches, nausea and pain is not a Constitutional violation). Doctors, whether practicing inside or outside of prisons, are not guarantors of pain-free living for their patients. Oden v. Cambra, No. C 97-3898 SI (PR), 1999 WL 183611, at *4 (N.D. Cal. Mar. 30, 1999).

In addition, prison regulations instruct health care providers to relieve only "severe pain." See Cal. Code Regs. tit 15, § 3350 (2007). Under prison regulations, CDCR shall provide medical or dental services which is based on a "medically necessity" and supported by outcome data as effective medical care. Id. § 3350(a). "Medical necessary" means health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate "severe pain." Id. § 3350(b)(1). "Severe pain" is defined as "a degree of discomfort that significantly disables the patient from reasonable independent function." Id. § 3350(b)(1).

The undisputed objective evidence in the UHR that tooth No. 8 or the draining fistula reveal that Plaintiff was not disabled from reasonable independent function so as to warrant pain medication. While Plaintiff may have experienced some discomfort or soreness at Tooth No. 8, for instance when chewing, such circumstance does not alone warrant pain medication.

The fact that Plaintiff contends he should have received pain medication in lieu of extraction as recommended by both Drs. Smith and Kirk does not create a triable issue of fact as to whether either defendant was deliberately indifferent. After Plaintiff refused extraction, Dr. Kirk attempted a scale and root-plane of tooth No. 8, despite Dr. Kirk's prognosis for saving the tooth was "poor." (Dr. Kirk Decl. ¶ 11.) It is undisputed that Plaintiff was seen by other dentists relating to tooth No. 8, and no physician or dentist ever prescribed pain medication for Plaintiff's tooth No. 8, except post-operative. It is further undisputed that at the time Drs. Smith and Kirk examined Plaintiff in September and

1  October 2007, Plaintiff's tooth No. 8 could not be saved due to the years of cumulative bone loss, and
2  the proper treatment was extraction.
3         The evidence does not support Plaintiff's contention that Defendants were deliberately
4  indifferent to the condition at tooth No. 8 on October 12, 2007, because they allegedly cancelled a
5  periodic exam.  The medical notes indicate that Plaintiff refused treatment on October 12, 2007 (Pl.'s
6  Opp'n at 50-51), and notwithstanding such refusal, Plaintiff was seen by Dr. Smith just three days
7  later on October 15, 2007. At the October 15, 2007, appointment Plaintiff requested an antibiotic for
8  tooth No. 8 for a bump on it.  However, Plaintiff claims that Dr. Smith allegedly told him to leave the
9  dental clinic.  (Pl.'s Opp'n, ECF No. 56 at 3 & 5.)  The exhibits cited by Plaintiff, however, controvert
10 Plaintiff's claim.  Plaintiff was uncooperative in the dental clinic, and refused the treatment suggested
11 by the doctors.  (See Pl's Opp'n, ECF No. 56 at 51 ["Lack of cooperation in the dental setting
12 constitutes refusal.  It is your responsibility when you come to the dental clinic that you demonstrate
13 willingness to be treated."].)  Indeed, the only treatment that would have alleviated the condition at
14 tooth No. 8-the treatment recommended by Defendants-was extraction, which Plaintiff unequivocally
15 refused.  (Dr. Kirk Decl. ¶¶ 5-6, Pl.'s Depo 48:17-23; Dr. Rosenberg Decl. ¶¶ 9, 11, 15, 16, 17; Ex. A
16 at 9.)
17        When Drs. Kirk and Smith offered to extract tooth No. 8, Plaintiff refused.  Indeed, had
18 Plaintiff allowed extraction, the periodontitis and draining fistula at tooth No. 8 would have ceased.
19 Thus, the evidence demonstrates that Defendants were not deliberately indifferent and Plaintiff simply
20 refused the offered treatment.  See, e.g., Worley v. Correctional Medical Services, No. CV-12-0440-
21 PHX-RCB (MEA), 2013 WL 4874456, at *4-5 (D. Ariz. Sept. 12, 2013) (prison dentist recommended
22 extraction of inmate plaintiff's infected tooth, which Plaintiff refused and insisted on root canal.
23 Summary judgment was granted in favor of prison dentist finding defendant "was not deliberately
24 indifferent for refusing to perform to perform a root canal; [d]efendant did not refuse to treat
25 [p]laintiff.  Rather, he offered a treatment plan that Plaintiff refused."); Rosenberg v. Lappin, NO. CV
26 09-1722-PA SH, 2010 WL 4668317, at *7-8 (C.D. Cal. Sept. 30, 2010) (prison dentist and inmate
27 disagreed on whether to extract or prescribe antibiotics to treat an abscess in a tooth.  The court held
28 that any pain the inmate-plaintiff suffered during the period in which he refused extraction was his

1 own doing); May v. Main Detention Facility of Sonoma County, No. C 93-1181 BAC, 1993 WL
2 299388, at *1 (N.D. Cal. July 23, 1993) (dismissal of claim for deliberate indifference when inmate-
3 patient alleged pain while waiting to see prison dentist then refused to permit recommended tooth
4 extraction.)
5       Accordingly, the undisputed evidence demonstrates that an extraction of Plaintiff's affected
6 teeth met dental standards of care. Plaintiff may have preferred some other type of procedure to keep
7 his tooth, however, Plaintiff's opinion regarding the best course of treatment is insufficient to establish
8 deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1059-1060 (9th Cir. 2004). Moreover,
9 Plaintiff has not submitted any evidence that the course of treatment Drs. Smith and Kirk chose was
10 medically unacceptable under the circumstances and that they chose this course in conscious disregard
11 of an excessive risk to Plaintiff's health. Id. at 1058.

12       **c.**       **Tooth Number 31**

13       Plaintiff contends that tooth No. 31 was "decayed" and he should have been provided pain
14 medication and antibiotics.
15       Plaintiff was first examined by Dr. T. Smith (note the Defendant is this action is Dr. R.D.
16 Smith) on August 14, 2006, with regard to discomfort with tooth No. 31. (Pl.'s Opp'n Ex. 0:2.) At
17 that time, Dr. T. Smith found the x-rays inconclusive and percussion tests tended to indicate normalcy.
18 It was noted that the tooth could be cracked but it was difficult to pinpoint. A diamond bar was used
19 to reduce cuspal inclines to reduce the stress on the tooth. It was further noted, at that time, that
20 extraction may be necessary but was not suggested at that time. (Id.)
21       The undisputed evidence demonstrates that Dr. Smith examined Plaintiff on September 19,
22 2007, and after taking an x-ray, he found that tooth No. 31 was cracked, and not infected. Based on
23 the medical opinion of Dr. Rosenberg, a cracked molar (without an acute infection or other
24 complications-as in this case) does not cause "excruciating" or severe pain, nor is the pain constant.
25 The pain is inconsistent, and frequently may be difficult to replicate during examination. (Dr.
26 Rosenberg Decl. ¶ 8.) In addition, Dr. Rosenberg further provides that "pain medication is not
27 standard treatment for the pain caused by a cracked molar. This is because the pain of a cracked molar
28 is intermittent, and occurs only when something directly impacts the cracked molar, such as when

chewing. The risks and side effects of daily pain medication significantly outweigh the benefits of eliminating intermittent pain when chewing. Moreover, pain when chewing on his right side would remind [Plaintiff] that he has a dental condition, and would reduce the risk of further damage to the cracked molar. (citation.) [Plaintiff' had had the condition of tooth No. 31 for over a year with no ill effects. Although [Plaintiff] was seen by other dentists for tooth No. 31, the UHR shows that no physician or dentist has ever prescribed pain medication for [Plaintiff's] tooth No. 31, except post-operatively." (Dr. Rosenberg Decl. ¶ 11.)

On September 19, 2007, Plaintiff complained that tooth No. 31 "last hurt yesterday when I ate. It's an annoyance." At his deposition, Plaintiff testified that tooth No. 31 only hurt when he chewed. He claimed he could not chew on one side. (Pl.'s Depo. 23:15-20; 34:8-11.[3]) Dr. Smith recommended extraction if an extended amalgam cap did not relieve the symptoms. On this date, Plaintiff was recommended for a follow-up appointment on October 15, 2007. Because Dr. Smith found that Plaintiff did not have any objective indication of a serious medical need as tooth No. 31, antibiotics were not prescribed. No other doctor or dentist has ever prescribed antibiotics for tooth No. 31. Indeed, in this case, Dr. Smith and Dr. T. Smith could not clinically reproduce the pain; both dentists palpitated tooth No. 31 with negative results. (Dr. Rosenberg Decl. ¶ 8; see also Ex. A at 2, 4.)

As previously stated, the undisputed evidence demonstrates that Dr. Smith examined Plaintiff on September 19, 2007, and after taking an x-ray, he found that tooth No. 31 was cracked, and not infected. Antibiotics would not have been effective because there was no evidence of any infectious process. (Dr. Rosenberg Decl. ¶ 7.) Indeed, during his deposition Plaintiff acknowledged that he did not need antibiotics for tooth No. 31. (Pl.'s Depo. 37:9-11.) Furthermore, no other doctor or dentist had ever prescribed antibiotics for tooth No. 31. Under these circumstances, there is no triable factual issue that Drs. Smith or Kirk were deliberately indifferent to Plaintiff's dental needs for failing to prescribe an antibiotic for tooth No. 31.

---

[3] Plaintiff attempts to dispute this fact by citing to a portion of his deposition transcript in which he stated "on September 16, 2007, Hernandez had pain when he drank or even breath air." (Pl's Stmt. Disputed Facts at ¶ 17, citing Pl.s Depo. 22:5-9.) Plaintiff is mistaken because the portion of the deposition cited relates to tooth No. 8, not tooth No. 31. (Pl.'s Depo. 22:3-13.)

1   The record indicates that Drs. Kirk and Smith did not deliberately deny treatment but,
2 instead, provided (or recommended) treatment different than what Plaintiff believed was necessary.
3 Plaintiff has provided no competent evidence to show that either Dr. Smith's or Dr. Kirk's approach
4 was medically unacceptable. The difference of opinion between Plaintiff and Dr. Smith and Dr. Kirk
5 as to the appropriate dental treatment would not support a finding of deliberate indifference. See
6 Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

7   In opposition to Defendants' motion, Plaintiff submits an affidavit in which he contends he
8 suffered "extreme pain," could not eat fresh fruit and vegetables, could not exercise or breathe air, and
9 suffered "blurry vision," as a result of the condition of tooth No. 31.

10   The undisputed evidence demonstrates that Drs. Smith and Kirk provided Plaintiff with proper
11 dental care in 2007 and 2008 for tooth No. 31. The undisputed evidence demonstrates that on
12 September 19, 2007, Dr. Smith examined and x-rayed tooth No. 31, found that the tooth had a large
13 metal amalgam with cusps that were undermined, and recommended extraction if an extended
14 amalgam cap did not relieve the symptoms. Thereafter, on January 17, 2008, Dr. Kirk examined
15 Plaintiff at a follow-up visit and recommended removal of the amalgam cap and affected cusps, and to
16 replace the cap. Plaintiff was eventually given a crown on tooth No. 31.

17   To whatever extent Plaintiff was experiencing more acute symptoms than what he described to
18 Drs. Kirk and Smith, they could not have reasonably known about it. Plaintiff has failed to present
19 evidence to show that he was refused care nor does he otherwise demonstrate that Drs. Smith and/or
20 Kirk intentionally treated him incorrectly with wanton disregard for his serious dental needs.
21 Although Plaintiff contends in his affidavit that he suffered "extreme pain," and other accompanying
22 symptoms, such as "could not eat freash [sic] fruits and vegetables," "could not exercise," "blurry
23 vision," Plaintiff fails to indicates that such symptoms were told to Defendants. (ECF No. 57 at ¶¶ 3-
24 11.) In fact, the dental records display no evidence that Plaintiff personally reported these symptoms
25 to anyone or that they even existed. Thus, there is insufficient evidence to support the finding that
26 either Defendant acted with wanton disregard in treating Plaintiff's dental s needs.

27   In addition, contrary to Plaintiff's claim, Dr. Smith did not recommend to "extract or (2) suffer
28 the pain" as the only treatment options. (Pl's Resp. to Defs.' DUF No. 10, ECF No. 56 at 27.) Rather,

the undisputed evidence indicates that Dr. Smith recommended extraction only if an extended amalgam cap was ineffective. (Dr. Rosenberg Decl. ¶ 5.) Indeed, Plaintiff did receive a new crown form tooth No. 31, and it was never extracted. (Pl.'s Dep. 47:18-24.)

The evidence available to Dr. Smith and Dr. Kirk at the time of their examinations on September 19, 2007, September 27, 2007, and October 15, 2007, support the finding that pain medication or antibiotics were unnecessary given the present state of tooth No. 31. During each of these visits, Plaintiff was provided dental attention and appropriate treatment. Accordingly, both Defendants are entitled to summary judgment. In light of this ruling, the Court need not and does not reach the issue of qualified immunity.[4]

## III.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion to strike Dr. Rosenberg's Declaration be DENIED;

2. Plaintiff's motion to portion of deposition withheld be DENIED;

3. Plaintiff's motion for substitution of deceased Defendant Dr. Smith be DENIED as moot; and

4. Defendants' motion for summary judgment be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time

///
///
///
///

---

[4] In addition, because Defendants Dr. Smith (who is now deceased) is entitled to summary judgment, the Court need not resolve the outstanding Rule 25 motion for substitution which is moot. (ECF No.

may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 12, 2015**

UNITED STATES MAGISTRATE JUDGE